David ALLMAN, Plaintiff

v.

Breanna COYLE, Defendant.

No. 04–1150.

United States District Court, E.D. Pennsylvania.

June 1, 2004.

Charles C. Shainberg, Shainberg & Viola, Philadelphia, PA, Robert D. Arenstein, New York City, for Plaintiff.

Cheryl L. Young, Wolf, Block, Schorr and Solis–Cohen, Norristown, PA, for Defendant.

## OPINION

POLLAK, District Judge.

The Hague Convention on the Civil Aspects of International Child Abduction ("Convention") was adopted "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention art. 1. The United States and Ireland, as signatories to the Convention, are both "Contracting States." Congress implemented the Convention in 1988 with the passage of the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610. Invoking the Convention and ICARA, David Allman, a citizen of Ireland, filed a complaint in this court against Breanna Coyle, alleged to be an American citizen,[1] seeking the return of their daughter Ayesha from the United States to Ireland. Twelve days after the complaint was filed, Ms. Coyle returned to Ireland with Ayesha. Ms. Coyle now moves to dismiss this action as moot. For

the reasons that follow, the motion to dismiss will be granted.

## Factual and Procedural Background

In considering a defendant's motion to dismiss, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Shaev v. Saper,* 320 F.3d 373, 375 (3d Cir.2003). The factual background that follows is drawn primarily from Mr. Allman's complaint.

Mr. Allman and Ms. Coyle began a relationship in December 1998 while both resided in Ireland. The two subsequently lived together, but never married. On June 7, 2000, a daughter, Ayesha, was born to the couple. Mr. Allman, Ms. Coyle, and Ayesha lived together in Cork City, Ireland, for over two years.

In August 2002, Mr. Allman and Ms. Coyle separated. Mr. Allman moved to Bandon in County Cork, and Ms. Coyle and Ayesha moved to a new residence in Cork City. Following the separation, Mr. Allman applied to the District Court for the Area of Clonakilty for a declaration of guardianship under section 6A of Ireland's Guardianship of Infants Act. The District Court conducted a hearing on December 10, 2002, after which the proceedings were adjourned to allow the parties to attend counseling and seek an agreement. When no agreement was reached, the District Court issued an order appointing Mr. Allman as a guardian of Ayesha and granting him a right of "access," or visitation, on four dates over the Christmas holiday in 2002 and weekly thereafter, from Tuesday morning until Wednesday afternoon.

Mr. Allman saw Ayesha weekly as scheduled through November 18–19, 2003.

---

1. Ms. Coyle's exact citizenship status is unclear. In his submissions, Mr. Allman alternately refers to Ms. Coyle as an American citizen and as a citizen of both the United States and Ireland.

The following week, on November 25, 2003, Ms. Coyle failed to appear with Ayesha to deliver her to Mr. Allman. Mr. Allman went to Ms. Coyle's home but was unable to locate either Ms. Coyle or Ayesha. On November 27, 2003, Mr. Allman spoke with the partner of Ms. Coyle's mother, who told Mr. Allman that he did not know where Ayesha was but that she was no longer in Ireland. Based on this information, Mr. Allman suspected that Ms. Coyle and Ayesha were living with family or friends in Montgomery County, Pennsylvania.

In December 2003, Mr. Allman submitted a request for assistance to Ireland's Department of Justice, Equality and Law Reform ("Department"), which is designated as Ireland's "Central Authority" for purposes of facilitating proceedings under the Convention. The Department contacted the American "Central Authority," the United States Department of State's Office of Children's Issues, which assisted Mr. Allman in obtaining counsel in the United States.

On March 17, 2004, Mr. Allman filed a complaint in this court under the Convention and ICARA, alleging that Ms. Coyle had taken their child from Ireland to the United States in violation of his custody rights. On March 24, pursuant to this court's order, the United States Marshals Service served Ms. Coyle at her sister's house in Glenside, Pennsylvania, with the complaint and an order from this court. The order directed Ms. Coyle to file a responsive pleading by March 29 and to appear personally, with Ayesha, at a hearing on March 31.

On March 29, an attorney who had been contacted, but not formally retained, by Ms. Coyle informed the court that Ms. Coyle had returned to Ireland. Meanwhile, Mr. Allman flew from Dublin to Philadelphia to appear with counsel at the scheduled hearing on March 31. Ms. Coyle did not appear, but retained counsel, who participated by telephone. Ms. Coyle's counsel reaffirmed that Ms. Coyle and Ayesha had returned to Ireland on March 27 or 28. Their return to Ireland has since been confirmed by Mr. Allman's counsel. A custody hearing involving the parties was scheduled for May 7, 2004, in an Irish court.

On April 20, 2004, Ms. Coyle filed the present motion to dismiss on the grounds that Ayesha's return to Ireland renders the case moot.

**Discussion**

*1. Mootness*

Federal courts are limited by the Constitution to resolving "cases and controversies." *See* U.S. Const. art. III, § 2, cl. 1; *Whitmore v. Arkansas*, 495 U.S. 149, 154–55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Mootness "ousts the jurisdiction of the federal courts and requires dismissal of the case. . . ." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 335, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). The Third Circuit has recognized that "the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 39 (3d Cir.1985).

■ The return of Ayesha to Ireland is an apt example of a change in circumstances that has "forestalled any occasion for meaningful relief." The authority of a court called on to enforce the Convention and ICARA does not extend to ruling on the merits of any underlying custody claims. Convention art. 19; 42 U.S.C.

§ 11601(b)(4).[2] Instead, a court may only determine whether a child's removal or retention was "wrongful"[3] and, if so, order the return of the child to the country where he or she was habitually resident immediately before the removal or retention. *Shalit v. Coppe,* 182 F.3d 1124, 1128 (9th Cir.1999). Since the filing of Mr. Allman's complaint, Ms. Coyle and Ayesha have returned to Ireland, which was Ayesha's habitual residence immediately before her removal.[4] Now that Ayesha has been returned to her habitual residence, this court cannot provide Mr. Allman with meaningful relief under the Convention. *See Mahmoud v. Mahmoud,* No. CV–96–4165, 1997 WL 43524, at *2 (E.D.N.Y. Jan. 24, 1997) (dismissing petition under Convention as moot upon child's return to habitual residence); *Burton v. Oyekan,* No. 95–CIV–5849, 1996 WL 591285, at *1 (S.D.N.Y. Oct. 15, 1996) (same); *In re Marriage of Henches,* No. 41887–4–I, 2000 WL 1667394, at *2 (Wash.App. Nov. 6, 2000) (same). Accordingly, I will grant Ms. Coyle's motion to dismiss this matter as moot.[5]

### 2. Fees and Expenses

■ Mr. Allman seeks to recover fees and expenses in the amount of $1,810.42 incurred in his efforts to locate Ms. Coyle and to litigate this matter.[6] He contends that he is entitled to recover his expenses because "had [Mr. Allman] not initiated these proceedings, [Ms. Coyle] would not have returned to Ireland." Mr. Allman also maintains that an award of fees and

2. Article 19 of the Convention states as follows: "A decision under this Convention concerning the return of the child shall not be taken to be determination on the merits of any custody issue." ICARA echoes this provision of the Convention: "The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 42 U.S.C. § 11601(b)(4).

3. The removal or retention of a child under the age of sixteen is "wrongful" where:
(a) it is in breach of the rights of custody attributed to a person … under the law of the State in which the child was habitually resident immediately before the removal or retention; and
(b) at the time of removal or retention those rights were actually exercised … or would have been so exercised but for the removal or retention.
Convention art. 3.

4. I make this determination of Ayesha's habitual residence only for the purpose of ruling on the pending motion to dismiss, for which the factual allegations in the plaintiff's complaint are taken as true. Mr. Allman's complaint states that Ayesha lived in Ireland from her birth in June 2000 until her removal to the United States by Ms. Coyle in November

2003. Although the Convention does not define "habitual residence," the Third Circuit, in construing the Convention, has defined a child's habitual residence as "the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective." *Feder v. Evans–Feder,* 63 F.3d 217, 224 (3d Cir.1995). Accepting as true the allegation that Ayesha had been "physically present" only in Ireland up to the time of her removal, it follows that Ireland is Ayesha's habitual residence.

5. Mr. Allman suggests that Ms. Coyle should be subject to sanction for her failure to appear with Ayesha as ordered by this court at the hearing on March 31, 2004. While as a formal matter Ms. Coyle's noncompliance with a court order is disapproved, her return with Ayesha to Ireland served the primary purpose of the Convention. Ms. Coyle and Mr. Allman can now resolve their custody dispute in the courts of the proper forum, Ireland. There is no purpose to be served in an American court taking any further action.

6. According to Mr. Allman's submission to the court, the expenses he incurred represent round-trip airfare from Ireland to Philadelphia, hotel costs, telephone calls, this court's filing fee, and the fee for hiring a private investigator.

expenses is warranted to deter Ms. Coyle from disregarding court orders in the future.

While I appreciate the significant expense that Mr. Allman has incurred in order to secure the return of his daughter to Ireland, the governing law provides no authority for the awarding of fees and expenses in this case. Article 26 of the Convention provides that a court "may, where appropriate," award fees and expenses "[u]pon ordering the return of a child or issuing an order concerning rights of access under this Convention." ICARA authorizes the implementation of this article as follows:

> Any court ordering the return of a child pursuant to an action brought under [ICARA] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

42 U.S.C. § 11607(b)(3). While there are differences between the two provisions-most significantly, the Convention states that courts "may" award costs, whereas ICARA directs that courts "shall" award costs unless the respondent establishes that an award would be clearly inappropriate-both have as a precondition for awarding costs that the court "order[ ] the return of a child." Because I have made no such order in this case, I have no authority to direct Ms. Coyle to pay the expenses incurred by Mr. Allman.

An appropriate order follows.

## ORDER

AND NOW, this 1 day of June, 2004, for the reasons stated in the accompanying opinion, it is hereby ORDERED that:

(1) This case is DISMISSED as moot.

(2) Mr. Allman's request for an award of fees and expenses is DENIED.

(3) This case is CLOSED for statistical purposes.